# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SIXTH ANGEL SHEPHERD RESCUE, | : | |
| INC. and TERRY ELIZABETH SILVA | : | CIVIL ACTION |
|     Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| GEORGE BENGAL, NICOLE WILSON | : | |
| and PENNSYLVANIA SPCA | : | No. 10-1733 |
|     Defendants. | : | |

## MEMORANDUM

**Schiller, J.**                                                                                         May 27, 2010

      Plaintiffs Sixth Angel Shepherd Rescue, Inc. ("Sixth Angel") and Terry Silva bring this action against Defendants George Bengal, Nicole Wilson, and the Pennsylvania Society for the Prevention of Cruelty to Animals ("PSPCA") based on Defendants' continued possession of three dogs that Plaintiffs claim to own. Plaintiffs claim that Defendants' retention of their dogs violates their constitutional rights. They also bring a state law conversion claim. Plaintiffs filed a motion for a temporary restraining order and/or preliminary injunction seeking the return of their dogs. Having held a hearing on the matter on April 27, 2010, and having reviewed the parties supplemental briefs, the Court grants Plaintiffs motion for a preliminary injunction and orders that the dogs be transferred to Plaintiffs' forthwith.

## I.     FACTS

      Plaintiff Sixth Angel is an organization based in Marcus Hook, Pennsylvania that rescues dogs from dangerous conditions. (Apr. 27, 2010 Hrg. Tr. at 7, 11.) It employs a network of foster homes to temporarily house dogs while it attempts to find them permanent homes. (*Id.* at

14-15.) Plaintiff Terry Silva is the head of Sixth Angel's Board of Directors. (*Id.* at 24.) This lawsuit involves Plaintiffs' attempts to rescue three dogs from North Carolina.

Two of the dogs that Plaintiffs attempted to rescue, "Tank" and "Butter," came from the Wayne County North Carolina Animal Control Facility ("Wayne County Facility"). (*Id*. at 9.) On March 31, 2010 and April 1, 2010 Plaintiffs exchanged e-mails with a representative of the Wayne County Facility about rescuing several dogs, including Tank and Butter. (Pl.'s Mot. for TRO and/or Prelim. Inj. on Initial Compl. [TRO Mot.] Ex. 4 [Wayne County e-mails].) Plaintiffs arranged for Tank and Butter to be removed from the Wayne County Facility, and to be boarded at Camp Cupcake for pets until they could be transported to Pennsylvania. (*Id.* Ex. 7 [Cupcake Invoice]; Apr. 27, 2010 Hrg. Tr. at 9-10.)

The third dog, "Nikki" a/k/a "Herbie," a cross-eyed Labrador, was removed from Elizabethtown, North Carolina. (Apr. 27, 2010 Hrg. Tr. at 6; TRO Mot. Ex. 1 [Nikki's Form].) He was held in a Sixth Angel-affiliated foster home in North Carolina while Plaintiffs arranged for him to be transported to Marcus Hook, Pennsylvania, during which time Sixth Angel paid for his health costs. (Apr. 27, 2010 Hrg. Tr. at 6-7, 33.) Plaintiffs had arranged for Nikki to be sponsored by a school – the students pooled money to send him treats and toys. (*Id*. at 37.) They also arranged for Nikki to be entrusted to the temporary care of Heather Stevens upon his arrival in Pennsylvania. (*Id*. at 35, 37.) The health form that accompanied Nikki indicated that the owner, ASF, was releasing him to Terry Silva, 13 West 10th Street, Marcus Hook, PA. (Nikki's Form.)

Plaintiffs contracted to have all three dogs placed on one transport vehicle driven by Anne Marie Wessel, who was associated with Camp Cupcake. (Apr. 27, 2010 Hrg. Tr. at 115;

Cupcake Invoice.) This was the first and only time that Plaintiffs used the services of this transporter. (*Id.* at 5.) Plaintiffs were to meet the transport on the evening of April 10, 2010 in a McDonald's parking lot in Marcus Hook, Pennsylvania to receive the dogs. (Cupcake Invoice.) Plaintiffs were waiting for the transport at the rendezvous point that evening. (Apr. 27, 2010 Hrg. Tr. at 76, 98-99.) However, based on an a confidential tip suggesting poor conditions on the transport, the Pennsylvania Bureau of Dog Law Enforcement ("Dog Law") intercepted and seized the vehicle and its contents in the McDonald's parking lot. (*Id.* at 92.) Conditions on the transport were allegedly subpar,[1] and the driver was allegedly cited by Dog Law for her violations. (*Id.* at 86-87, 96, 116.) All the documents on the transport relating to the dogs were seized, and Dog Law and the PSPCA took pictures of the documents. (*Id.* at 77-80.) Dog Law turned the dogs over to Defendant PSPCA for the original purpose of providing them with veterinary examinations. (*Id.* at 76, 117.) PSPCA, however, is still in possession of the dogs. (*Id.* at 132-33.)

In the transport vehicle, officials found a handwritten log containing names and addresses. (*Id.* at 109; Apr. 27, 2010 Hrg. Pl.'s Ex. 13 [Transport Papers].) The first handwritten entry in the log reads:

> Terry      3      13 West Tenth Street
> 135 B 300T  435    Marcus Hook PA

(Transport Papers.) The Camp Cupcake Invoice reads in relevant part:

> Boarding: 3 dogs x 9 days x 5.00 = 135.00
> Transport: 3 dogs x 100.00 = 300
> Grand Total: 435.00

---

[1] Alleged problems with the conditions on the transport included overcrowding and the presence of dog waste.

(Cupcake Invoice.) When these two documents are read together, the entry in the driver's log becomes clearer: "135B" represents the $135 boarding cost; "300T" represents the $300 transport cost; "435" represents the total owed; and 3 represents 3 dogs. The address in the log, 13 West Tenth Street, Marcus Hook, PA is Sixth Angel's Address, thus the name "Terry" in the log refers to Terry Silva. Dog Law also recovered a typed invoice on the letterhead of Critters on the Go!! Rescue Transport Services, which listed Sixth Angel's address; listed Terry as the contact; described the critters as: 1 Brown Pup, 1 White GP/Shep, and 1 Black Lab; and listed a price of $435.00. (Transport Papers.) A Dog Law official saw Silva hand Wessel an envelope before the vehicle and its cargo were seized. (Apr. 27, 2010 Hrg. Tr. at 76-77.) Dog Law's search of the envelope revealed that it contained $200.00 in cash and a check from Sixth Angel to Camp Cupcake in the amount of $210.00 dated April 10, 2010. (*Id*. at 76-78.)

Authorities also found a large envelope in the possession of the transport driver – written in the center of the envelope was "Sixth Angel Shepherd Rescue," and in the top left corner was "W.C.A.C."[2] (*Id*. at 109; Transport Papers.) The envelope contained one picture each of Nikki, Tank, and Butter. (TRO Mot. Ex. 1; *Id.* Ex. 3.) It also contained a Companion Animal Certificate of Veterinary Examination from the North Carolina Department of Health and Human Services. (Transport Papers.) This form indicates that Wayne County Animal Control shipped Tank and Butter to Terry Silva at 15 West 10th Street, Marcus Hook, PA. (*Id*.) Tellingly, there is a third dog on the list, named Lakota, who Plaintiffs undisputedly own and who is in Plaintiffs' possession. (Apr. 27, 2010 Hrg. Tr. at 10; TRO Mot. Ex. 7.) Lakota was rescued from the same

---

[2] W.C.A.C. is the same moniker that Wayne County Animal Control marked in the owner section of the rabies certificates pertaining to the dogs at issue.

4

Wayne County Facility as Tank and Butter. (*Id*.) Plaintiffs have Lakota's Animal Control Form from Wayne County. (*Id*.) In the disposition section of that form, the box next to "release to rescue" is checked and Sixth Angel is named as the rescue organization. (*Id*.) The Sixth Angel envelope also contained an Articles of Incorporation–Non-Profit form from the Pennsylvania Department of State for Sixth Angel, identifying it as an animal rescue, and naming Terry Silva as incorporator. (TRO Mot. Ex. 11 [Articles of Incorporation].) The envelope also contained rabies vaccination forms for the three dogs, naming Wayne County as the owner at the time of the vaccinations. (Transport Papers.) Lastly, the Sixth Angel envelope contained medical forms for the dogs, signed by the shipping parties.[3] (Transport Papers.)

On April 22, 2010 during a conference in chambers, this Court approved the questioning of Wayne County Animal Control Director, Vicki Falconer, by telephone. Neither party objected at the hearing to testimony being taken in such a manner, nor have they since objected. The Court made Falconer aware of the nature of the interaction and the parties questioned and cross-examined her. Falconer stated that Wayne County released the dogs to Sixth Angel for rescue.[4]

---

[3] Plaintiffs also provided the Court with a facsimile purportedly sent by Vicki Falconer, Director of Wayne County Animal Control, which includes health forms for Tank and Butter listing Sixth Angel in the disposition section. However, the Court need not rely on this piece of information because it is duplicative of proof already on the record.

[4] Falconer also sent a later letter to Defendants on April 14, 2010 that read in relevant part: "I had 3 dogs that were to be released to 6th Angel Shepherd Rescue..."

## II. STANDARD OF REVIEW

Before a court will issue a preliminary injunction, the moving party must demonstrate that it satisfies the following four factors: 1) a likelihood of success on the merits; 2) that he will be irreparably harmed by the conduct complained of if the preliminary injunction is not issued; 3) that granting the preliminary injunction will not result in even greater harm to the non-moving party; and 4) that granting such relief is in the public interest. *Kos Pharm., Inc. v. Andrx Labs., Inc.*, 369 F.3d 700, 708 (3d Cir. 2004); *Pappan Enters. Inc. v. Hardee's Food Sys., Inc.*, 143 F.3d 800, 803 (3d Cir. 1998).

## III. DISCUSSION

Despite the litter of paperwork filed by the parties, the issue before the Court is very simple: where do these dogs belong? It is abundantly clear that Sixth Angel and Silva have shown a likelihood of success of proving that they were the designated recipients of these dogs.

### A. Likelihood of Success on the Merits

Conversion is "the deprivation of another's right of property in, or use or possession of, a chattel, without the owner's consent and without lawful justification." *Shonberger v. Oswell*, 530 A.2d 112, 114 (Pa. Super. Ct. 1987) (citing *Stevenson v. Economy Bank of Ambridge*, 197 A.2d 721, 726 (Pa. 1964). The Court's analysis turns on the issue of ownership of the dogs. Plaintiffs have well exceeded their burden of proving a likelihood of success on the merits of their conversion claim. Furthermore, Defendants unquestionably deprived Plaintiffs of their right in their property, an intrusion to which Plaintiffs certainly did not consent, and for which Defendants fail to offer any lawful justification.

A dog's owner is defined very broadly as every person having a right of property in a dog. 3 PA. STAT. ANN. § 459-102 (2008). Here, Plaintiffs are the only parties demonstrating any property right in the dogs, and they have shown a right to these dogs superior to all others. There is ample evidence to support the claims that Plaintiffs arranged to save these three dogs and that their previous owners in North Carolina released them to Plaintiffs for that purpose. The parties relinquishing the dogs clearly demonstrated their intention to transfer the dogs to Plaintiffs–they released the dogs to Plaintiffs' control, allowing them to transport the dogs to Marcus Hook, Pennsylvania, and sent along relevant documents naming Plaintiffs as the receiving parties. Plaintiffs demonstrated their ownership interest by arranging for the boarding and transport of the dogs, and by paying for those services.

The Court is satisfied that Plaintiffs have right to these three dogs. Nikki was released to Sixth Angel-approved foster care before being shipped on the transport. Plaintiffs paid for both his medical expenses while at the foster home, and his transportation costs. Plaintiffs further arranged for a school to sponsor the dog, and had arranged for Heather Stevens to temporarily foster the dog once he was received. All documents relating to Nikki indicated that he was being sent to Plaintiffs. As for Tank and Butter, once Wayne County Animal Control released them for rescue, Plaintiffs arranged for and paid for their boarding and transport. All communications from Wayne County Animal Control indicate its intent to release the dogs to Plaintiffs. Finally, all records on the transport clearly indicated that the transporter intended to deliver the three dogs to Plaintiffs.

The issue that led to Defendants possessing Plaintiffs dogs stemmed from the poor conditions aboard the transport. The Court certainly does not condone the actions of the transporter, however, it is important to note that her behavior is not the subject of this litigation. She will be dealt with

separately. Under exigent circumstances, such as when a dog is to be euthanized, a rescue often must act quickly to move the dog to avoid a fatal result. In this instance, Plaintiffs unknowingly chose a bad transporter, and that is unfortunate, but it does not affect the ultimate issue of ownership of the dogs.

Defendants have presented no credible evidence suggesting that they are the rightful owners of these dogs, nor have they given any indication as to why their possession of the dogs is lawful. Therefore, the Court finds that Plaintiffs have demonstrated a substantial likelihood of success on the merits of their conversion claim.

B.     **Remaining Factors**

In considering the extent of the harm Plaintiffs and Defendants would suffer based on the preliminary injunction, the Court finds that the harm to the Plaintiffs outweighs the harm to the Defendants. Plaintiffs are being deprived possession of their unique property. One cross-eyed lab is not the same as the next, making the property irreplaceable. Deprivation of such property under the circumstances presents great harm to Plaintiffs. Conversely, Defendants are chasing their tails, and have asserted no facts that would tend to establish their right to continued possession of the dogs, thus making the risk of injury to them, from removing the dogs from their possession, minimal at best. Defendants seem to argue that they are worried about Plaintiffs' ability to maintain the health and welfare of the dogs. Defendants are barking up the wrong tree, as the Court does not share this concern, and finds Plaintiffs capable of the task. Plaintiffs have a valid kennel license and operate a dog rescue. (April 27, 2010 Hrg. Tr. at 91-92.)

The public interest is best served by returning the dogs to the Plaintiffs. It is clear that both

parties have the dogs' best interests at heart, and the Court commends that.  It is likely that both parties would attempt to find adoptive homes for these dogs were they granted ownership.  But the public interest is served when property rights are settled.  Here, that means returning the dogs to Plaintiffs.

## IV. CONCLUSION

Accordingly, the Court will enter the preliminary injunction for Plaintiffs.  An appropriate Order will be docketed separately.