IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SIXTH ANGEL SHEPHERD RESCUE, INC., et al., | : | |
| Plaintiffs, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| GEORGE BENGAL, et al., | : | No. 10-1733 |
| Defendants. | : | |

MEMORANDUM

Schiller, J.                                                                                         September 23, 2013

Sixth Angel Shepherd Rescue, Inc. ("Sixth Angel") and Terry Silva brought this action asserting constitutional and state law claims against George Bengal, Nicole Wilson, and the Pennsylvania Society for the Prevention of Cruelty to Animals ("PSPCA") based on Defendants' confiscation of Plaintiffs' three dogs. The Court granted Plaintiffs' request for a preliminary injunction and ordered Defendants to return the dogs to Plaintiffs. Now before the Court is Plaintiffs' motion for attorney's fees and costs, which the Court will grant. Plaintiffs are awarded $50,418.75 in attorney's fees and $1,344.50 in costs.

I.     BACKGROUND

On April 16, 2010, Plaintiffs sued Defendants, claiming that Defendants improperly confiscated three of Plaintiffs' dogs in violation of state law and Plaintiffs' constitutional rights. (Compl. ¶¶ 7, 40, 61-105.) Specifically, Plaintiffs sued under 42 U.S.C. § 1983, alleging that Defendants took Plaintiffs' dogs "in violation of Plaintiffs' constitutional rights to property and liberty with procedural and substantive due process." (*Id*. ¶¶ 7, 72.) In addition, Plaintiffs asserted claims for conversion and bailment based on Defendants' failure "to care for the live

property of the Plaintiffs." (*Id.* ¶¶ 97, 100-105.) Plaintiffs sought damages and an injunction ordering Defendants to return the dogs. (*Id.* ¶¶ 56, 105.)

On April 21, 2010, Plaintiffs filed a motion for a temporary restraining order and/or preliminary injunction. Following a hearing, the Court granted Plaintiffs' request for a preliminary injunction based on the conversion claim, and ordered Defendants to return the dogs to Plaintiffs. *See Sixth Angel Shepherd Rescue, Inc. v. Bengal*, Civ. A. No. 10-1733, 2010 WL 2164521 (E.D. Pa. May 27, 2010). The Court did not consider the merits of Plaintiffs' claims under 42 U.S.C. § 1983. *Id*. Defendants appealed, and the Court's decision was affirmed by the Third Circuit. *Sixth Angel Shepherd Rescue, Inc. v. Bengal*, 448 F. App'x 252 (3d Cir. 2011).

On April 30, 2013, the Court held a telephone conference with the parties, who informed the Court that the only remaining issues were attorney's fees and costs. Plaintiffs filed a motion for attorney's fees and costs on May 29, 2013, requesting $75,495 in attorney's fees and $4,420 in costs. (Pls.' Pet. for Att'y's Fees ¶ 19.) On June 25, 2013, the Court ordered Plaintiffs to file a more detailed itemization of costs, excluding costs that Plaintiffs were already granted by the Third Circuit.

On August 9, 2013, Plaintiffs filed an amended motion for attorney's fees and costs, requesting $84,665 in attorney's fees and $5,786 in costs. (Pls.' Supplement to Pet. for Att'y's Fees Ex. 2 [Billing Records 2] at 11.) In responses filed June 21, 2013, and August 21, 2013, Defendants concede that Plaintiffs are entitled to attorney's fees and costs, but object to the number of hours spent, the hourly billing rate Plaintiffs propose, and the amount of costs. (Defs.' Resp. to Pls.' Pet. for Att'y's Fees [Defs.' First Resp.]; Defs.' Resp. to Pls.' Supplemental Pet. for Att'y's Fees [Defs.' Second Resp.].) Defendants also request that the Court reduce Plaintiffs'

attorney's fees by $6,919.06, the cost of the veterinary care administered to Plaintiffs' dogs after Defendants confiscated them. (Defs.' Second Resp.)

## II. DISCUSSION

### A. Attorney's Fees

Attorney's fees generally are not recoverable on a conversion claim in Pennsylvania. *See In re U.S. Physicians*, Civ. A. Nos. 99-4094, 98-34011, 2002 WL 31866247, at *3 (E.D. Pa. Dec. 20, 2002) ("[T]here is no statute providing for recovery of counsel fees to the successful litigant in an action for conversion . . . ."); *see also Trizechahn Gateway LLC v. Titus*, 976 A.2d 474, 482-83 (Pa. 2009) (noting that Pennsylvania follows the federal "American Rule" regarding attorney's fees, under which "a litigant cannot recover counsel fees from an adverse party unless there is express statutory authorization, a clear agreement of the parties, or some other established exception").

However, attorney's fees may be awarded to a prevailing party in an action to enforce 42 U.S.C. § 1983. *See* 42 U.S.C. § 1988(b). If a party alleges both a claim under § 1983 and a non-fee eligible claim, and the court decides only the non-fee eligible claim, the prevailing party may recover attorney's fees if: (1) the § 1983 claim was substantial and (2) the non-fee eligible claim arose from a "common nucleus of operative fact." *See Maher v. Gagne*, 448 U.S. 122, 132 n.15 (1980); *see also Rogers Grp., Inc. v. City of Fayetteville*, 683 F.3d 903 (8th Cir. 2012). If a federal claim is substantial enough to support supplemental jurisdiction over a related state law claim, then it is substantial enough to support an award of fees to a party who prevails only on the state law claim. *See Rogers Grp.*, 683 F.3d at 912; *see also Fross v. Cnty. of Allegheny*, 848 F. Supp. 2d 547, 552 (W.D. Pa. 2012).

Plaintiffs meet *Maher*'s requirements of substantiality and relatedness. Plaintiffs' § 1983 claim is sufficiently substantial because it conferred jurisdiction on the Court over the state law claim of conversion. *See Sixth Angel Shepherd Rescue*, 448 F. App'x at 253 ("The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1367."). The § 1983 claim and the conversion claim also arose from a "common nucleus of operative fact." *See Maher*, 448 U.S. at 132 n.15. Both claims arose from the seizure of Plaintiffs' dogs by the Pennsylvania Bureau of Dog Law Enforcement. Therefore, Plaintiffs are eligible for attorney's fees under § 1988 so long as they prevailed on their state law claim.

### 1. Prevailing party status

Defendants concede that Plaintiffs are a prevailing party. (Defs.' Second Resp.) The Court's own analysis leads to the same conclusion. To be a "prevailing party," the plaintiff must "at a minimum, . . . be able to point to a resolution of the dispute which changes the legal relationship between itself and the defendant." *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792 (1989). That change must "achieve[ ] some of the benefit the part[y] sought in bringing the suit." *Singer Mgmt. Consultants, Inc. v. Milgram*, 650 F.3d 223, 228 (3d Cir. 2011) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). The change also must be "judicially sanctioned," and not simply result from a voluntary change in the defendant's conduct. *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 605 (2001). If fees are sought based on interim relief, such as a preliminary injunction, that relief must be "derived from some determination on the merits." *Singer Mgmt. Consultants,* 650 F.3d at 229.

The Third Circuit has held that "the 'merits' requirement is difficult to meet in the context of TROs and preliminary injunctions, as the plaintiff in those instances needs only to

show a *likelihood* of success on the merits (that is, a reasonable chance, or probability, of winning) to be granted relief." *Id*. However, in "rare situation[s]," a grant of a preliminary injunction may be a merits-based determination supporting an award of attorney's fees. *Id*.; *see also People Against Police Violence v. City of Pittsburgh*, 520 F.3d 226 (3d Cir. 2008) (upholding an award of attorney's fees to the plaintiff, who won a preliminary injunction in a case that never proceeded to judgment).

In granting Plaintiffs' motion for a preliminary injunction, this Court made a merits-based determination that entitles Plaintiffs to attorney's fees. The Court found that "[d]efendants unquestionably deprived Plaintiffs of their right in their property, an intrusion to which Plaintiffs certainly did not consent, and for which Defendants fail to offer any lawful justification." *Sixth Angel Shepherd Rescue,* 2010 WL 2164521, at *3. Plaintiffs "well exceeded their burden of proving a likelihood of success on the merits of their conversion claim." *Id*. Because the Court finds that Plaintiffs were the prevailing party, the Court will determine the amount of attorney's fees to award Plaintiffs.

    2. *Hours spent on litigation*

"The starting point for determining the amount of a reasonable fee is the lodestar, which courts determine by calculating the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *McKenna v. City of Phila.*, 582 F.3d 447, 455 (3d Cir. 2009). When calculating the lodestar, a court should exclude hours that are "excessive, redundant, or otherwise unnecessary." *Id.* A court should also "reduce the hours claimed by the number of hours spent litigating claims on which the party did not succeed, that were distinct from the claims on which the party did succeed, and for which the fee petition inadequately

documents the hours claimed." *Loughner v. Univ. of Pittsburgh*, 260 F.3d 173, 178 (3d Cir. 2001); *see also Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990).

Plaintiffs submitted two fee petitions with conflicting information about the number of hours that attorney Terry Silva spent on the case. In a fee petition filed May 29, 2013, Silva states that she spent 213.2 hours on the underlying litigation. (Pls.' Pet. for Att'y's Fees Ex. 1 [Billing Records 1] at 10.) In a fee petition filed August 9, 2013, Silva states that she spent 232.6 hours on the underlying litigation. (Billing Records 2 at 11.) The August 9 fee petition includes some tasks that Silva claims to have performed before May 29, 2013, but which she did not list in her original fee petition. For example, the August 9 fee petition states that Silva spent 7.1 hours on June 29, 2010, to "Research/prepare Complaint against Dog Law on Citation." (Billing Records 2 at 8.) This item was not included in the May 29 petition. Other tasks, listed in both fee petitions, appear as having taken more time in the August 9 fee petition. For example, the August 9 fee petition states that Silva spent 0.6 hours on May 24, 2011, to "Research and Draft the Standard of Review." (*Id*. at 9.) This item was listed in the May 29 fee petition as requiring 0.3 hours of work. (Billing Records 1 at 8.)

Defendants rightly challenge the hours that appear in the August 9 fee petition but not in the May 29 fee petition. (Defs.' Second Resp.) The Court will not consider the hours listed in the August 9 fee petition for work performed before May 29, but which Silva failed to include in the May 29 fee petition. Plaintiffs had ample opportunity to request these fees in their May 29 fee petition. After receiving the May 29 fee petition, the Court ordered Plaintiffs to submit a more detailed itemization of costs, but did not request a new fee petition. Therefore, the Court will calculate attorney's fees based on the 213.2 hours listed in the May 29 fee petition.

Defendants contest the hours spent by Silva, both generally and specifically, claiming that some of the hours were duplicative, unreasonable, or spent on motions that were unsuccessful and unrelated to the claim on which Plaintiffs prevailed. (Defs.' First Resp. Ex. B [Objections to Fees & Costs 1]; Defs.' Second Resp. Ex. B [Objections to Fees & Costs 2].) The Court agrees and will therefore reduce the hours for which Plaintiffs will be compensated.

First, the Court will reduce the hours claimed for revising and reviewing the motion for a temporary restraining order and/or preliminary injunction from 7.3 hours to 3 hours. Defendants argue that the additional 4.3 hours were excessive, and the Court agrees. The motion was poorly drafted, and Silva had already spent 21 hours researching and writing the original draft. (Billing Records 1 at 2.) Second, the Court agrees with Defendants that it was unreasonable to spend 0.6 hours "pulling [the] docket." (Objections to Fees & Costs 1; Objections to Fees & Costs 2.) The Court will exclude this time.

Finally, the Court agrees with Defendants that Plaintiffs are not entitled to fees for 13.6 hours during which Silva worked on unsuccessful motions that were not sufficiently related to this case. First, the Court will exclude the 7.6 hours that Silva spent on Plaintiffs' unsuccessful motion to enforce compliance with subpoenas served on Marcus Hook Borough and the Delaware Society for the Prevention of Cruelty to Animals ("DSPCA"). These subpoenas were relevant not to this case, but rather to the DSPCA's separate investigation of Silva (*see* Document No. 19), and to complaints that became the subject of a separate lawsuit against Marcus Hook Borough. *See Sixth Angel Shepherd Rescue, Inc. v. West*, 790 F. Supp. 2d 339 (E.D. Pa. May 3, 2011). Second, the Court will exclude the 1.5 hours that Silva spent to "File and serve Joinder Complaint." (Objections to Fees & Costs 1; Objections to Fees & Costs 2.) The Court denied Plaintiffs' motion to file that complaint, a version of which was later filed in a

separate action. Third, the Court will exclude the 4.5 hours that Silva spent on Plaintiffs' unsuccessful motion to strike language in Defendants' exhibit, a disposition against Silva in magisterial district court. That dispute was attenuated from the principal issues before this Court. After excluding 13.6 hours spent on unsuccessful and unrelated motions, 4.3 hours spent revising the motion for a temporary restraining order and/or preliminary injunction, and 0.6 hours spent pulling the docket, the Court will reduce Plaintiffs' hours on the underlying litigation from 213.2 to 194.7.[1]

### 3. Hourly rate

The second figure that informs the lodestar is the reasonable hourly rate, calculated "according to the prevailing market rates in the community." *Smith v. Phila. Hous. Auth.*, 107 F.3d 223, 225 (3d Cir. 1997). The party seeking attorney's fees bears the burden of producing sufficient evidence of what constitutes a reasonable market rate, which is established "with reference to the community billing rate charged by attorneys of equivalent skill and experience performing work of similar complexity." *Carey v. City of Wilkes-Barre*, 496 F. App'x 234, 236 (3d Cir. 2012). If a party fails to meet that burden, "the district court must exercise its discretion in fixing a reasonable hourly rate." *See Washington v. Phila. Cnty. Court of Common Pleas*, 89 F.3d 1031, 1036 (3d Cir. 1996); *see also L.J. ex rel. V.J. v. Audubon Bd. of Educ.*, 373 F. App'x 294, 297 (3d Cir. 2010).

Plaintiffs request an hourly rate of $350, the fee that Plaintiff Sixth Angel agreed to pay Silva for her legal work in this case. (Pls.' Pet. for Att'y's Fees ¶ 8; Defs.' Second Resp. Ex. A [Sixth Angel Bd. Documents].) Defendants claim that the Court should "closely scrutinize[]"

---

[1] This case would have been resolved much more quickly if the performances by the lawyers on both sides had been stronger.

Silva's hourly rate because of the close relationship between Silva and Sixth Angel.[2] (Defs.' Second Resp.) However, Defendants do not suggest an alternative hourly rate.

Plaintiffs fail to meet their burden of establishing that $350 is a reasonable hourly rate for Silva's work. To support the reasonableness of her fee, Silva submits an affidavit stating that she has practiced law since 1984, and that she has "developed a specialty of injunction work about half the time in federal court often in federal statutory cases." (Silva Aff. ¶ 2.) Silva claims that a fee of $350 per hour is "standard for me and in the Philadelphia Area" in cases where "recovery is uncertain and the client is unable to pay or advance costs." (*Id*. ¶ 3.) However, the affidavit of a prevailing party's attorney is not sufficient to show the reasonableness of her fee. *See Carey*, 496 F. App'x at 236.

In addition to Silva's affidavit, Plaintiffs offer affidavits from two lawyers who practice in Pennsylvania. However, these affidavits cannot carry Plaintiffs' burden. Jon Auritt states that he has practiced law in nearby Media, Pennsylvania, for more than thirty years, and has litigated "[d]ozens" of cases "pertain[ing] to civil rights." (Pls.' Supplement to Pet. for Att'y's Fees Ex. B [Auritt Aff.] ¶ 1.) Auritt charges $300 per hour, although he is "aware that attorneys in the Philadelphia area oftentimes have charged more." (*Id*. ¶ 3.) This affidavit does not support Plaintiffs' rate because Auritt charges $50 less than Plaintiffs' rate, even though he has at least one more year of experience than Silva. Plaintiffs also submit the affidavit of Alan Denenberg, who states that he has been practicing law in Philadelphia for twenty-five years. (*Id*. Ex. A [Denenberg Aff.] ¶ 1.) Denenberg claims that hourly rates between $450 and $550, including

---

[2] Both Silva and Sixth Angel are Plaintiffs in this case. Silva was a founder of Sixth Angel and a member of its Board of Directors until she resigned in January of 2011. (Pls.' Supplement to Pet. for Att'y's Fees Ex. 1 [Silva Aff.] ¶ 1.) The Board of Sixth Angel agreed on April 12, 2010, that Silva would take a leave of absence from the Board. (Sixth Angel Bd. Documents.) On the same day, Sixth Angel agreed to retain Silva as its attorney. (*Id*.)

$350 per hour on a fee petition, are "[r]easonable and customary rates in our District" in civil rights cases seeking injunctive relief, where the attorney has twenty-nine years of experience. (*Id.* ¶ 5.) Although Denenberg's affidavit is more helpful to Plaintiffs, he cannot carry their burden. First, Silva's litigation experience is not necessarily comparable to the experience of other lawyers who have practiced for twenty-nine years. Experience depends not only on the number of years of practice, but also on a lawyer's caseload and the complexity of her docket. Second, Denenberg does not refer to Silva's "skill," "reputation," or "ability," even though those factors are important to inform the reasonableness of the rate. *See Carey*, 496 F. App'x at 236, 237 n.3. Denenberg also mischaracterizes the outcome of this case, assuming that Plaintiffs prevailed "at trial." (Denenberg Aff. ¶ 4.) Because Plaintiffs fail to carry their burden of establishing that $350 is reasonable, the Court will use its discretion to determine a reasonable hourly rate. *See Washington*, 89 F.3d at 1036.

The Court concludes that an hourly rate of $250 is reasonable considering the quality of Silva's work. Many of Plaintiffs' filings were convoluted and had errors of law, logic, grammar, or spelling. For example, Count II of the Complaint states that "Defendants have . . . damaged and disparaged the Plaintiffs' rescue activities and reputation for which Defendants should be responsible in damages," thereby possibly setting forth a claim for a state law tort, such as defamation. (Compl. ¶ 87.) However, Count II concludes with, "The above is a violation of Plaintiffs' constitutional rights to due process and property." (*Id.* ¶ 94.) Other filings by Plaintiffs are similarly disorganized. While the Auritt and Denenberg affidavits indicate that an hourly fee between $300 and $550 is reasonable for an attorney in the Philadelphia area with approximately twenty-nine years of experience in civil rights cases, Silva's performance calls for a reduction in

this case. Based on an hourly rate of $250 and a total of 194.7 hours, the lodestar for the principal litigation is $48,675. [3]

### 4. Adjusting the lodestar

After the lodestar is calculated, a district court may consider other factors, such as the "results obtained," to adjust the award of fees upward or downward. *Hensley*, 461 U.S. at 434. Where successful and unsuccessful claims "involve a common core of facts" or are "based on related legal theories," the district court "should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.* at 435. "[A] plaintiff who failed to recover damages but obtained injunctive relief, or vice versa, may recover a fee award based on all hours reasonably expended if the relief obtained justified that expenditure of attorney time." *Id.* at 435 n.11.

Defendants argue that attorney's fees should be reduced because Plaintiffs "did not receive any compensatory or other damages." (Defs.' Second Resp.) The Court disagrees. Although the Complaint requested damages for emotional distress, injury to Plaintiffs' reputation, and injury to Plaintiffs' dogs, Plaintiffs did not pursue these claims beyond listing them in the Complaint. (Compl. ¶¶ 77, 78, 87.) It would be difficult to divide, on a claim-by-claim basis, the 22.6 hours that Silva spent on the Complaint. This was a reasonable amount of time to spend on the Complaint, given that Plaintiffs ultimately prevailed on their claim for

---

[3] A hearing is not necessary to help the Court decide a reasonable rate in this case. *See Drelles v. Metro. Life Ins. Co.*, 90 F. App'x 587, 591 (3d Cir. 2004) ("A hearing must be held only where the court cannot fairly decide disputed questions of fact without it."). The Court is reducing Plaintiffs' requested rate based on personal knowledge of Silva's performance. *See Mantz v. Steven Singer Jewelers*, 100 F. App'x 78, 81 (3d Cir. 2004) ("In assessing the reasonableness of the hourly rate asserted by . . . counsel, the court properly considered . . . its perception of counsel's skill and experience during the trial of the underlying matter, as well as the quality of his moving papers."); *see also Bell v. United Princeton Props., Inc.*, 884 F.2d 713, 719 (3d Cir. 1989) ("[A] judge may reduce requested fees with respect to matters within the judge's personal knowledge . . . .").

injunctive relief. In addition, Plaintiffs' claims for damages and injunctive relief arose from a single set of facts surrounding Defendants' seizure of Plaintiffs' dogs. Therefore, the Court will not reduce the lodestar based on Plaintiffs' failure to pursue their claims for damages.

The Court also rejects Plaintiffs' request for a twenty percent increase in the lodestar to compensate them for the delay in receiving attorney's fees. (Pls.' Supplement to Pet. for Att'y's Fees at 2.) Defendants object to this adjustment, claiming that it is unsupported by "case law or other authority." (Defs.' Second Resp.) The Third Circuit has held that district courts may increase the lodestar to "compensate the attorney for the time gap between the actual expenditure of services and the fee award." *Black Grievance Comm. v. Phila. Elec. Co.*, 802 F.2d 648, 656 (3d Cir. 1986), *vacated on other grounds*, 483 U.S. 1015 (1987). However, Plaintiffs bear the burden of producing evidence of the costs they incurred because of the delay in payment. *See Student Pub. Interest Research Grp. of N.J., Inc., v. AT&T Bell Labs.*, 842 F.2d 1436, 1453 (3d Cir. 1988). In this case, Plaintiffs stated only, "Interest even at six per cent (6%) each year for three (3) years the request is more than a reasonable accommodation for that three (3) year delay." (Pls.' Supplement to Pet. for Att'y's Fees at 2.) Because Plaintiffs did not provide evidence to support a delay enhancement, the Court will deny Plaintiffs' request.

### 5. *Fee petition litigation*

Time spent on the fee petition should be analyzed separately from time spent on the principal litigation. *See Rode*, 892 F.2d at 1192. Attorney's fees for the fee petition litigation, like fees for the principal litigation, are calculated by multiplying a reasonable hourly fee by hours reasonably expended. That figure, the lodestar, may be reduced to reflect partial success. *See Institutionalized Juveniles v. Sec'y of Pub. Welfare*, 758 F.2d 897, 924 (3d Cir. 1985)

(holding that courts should "treat the fee petition litigation as a separate entity subject to lodestar and *Hensley* reduction analysis").

Plaintiffs claim that Silva spent 2.5 hours on the fee petition filed May 29, 2013, and 6.8 hours on the fee petition filed August 9, 2013. Defendants object to 1.6 of the hours spent drafting the first fee petition, including 1.1 hours spent to "[r]eview and revise bill" and 0.5 hours spent to "[p]repare filing." (Objections to Fees & Costs 1; Objections to Fees & Costs 2.) The Court does not believe that a total of 2.5 hours to prepare the first fee petition is excessive. Defendants do not object to the additional 6.8 hours spent preparing the second petition, and the Court may not *sua sponte* reduce these hours as excessive. *See United States v. Eleven Vehicles, Their Equip. & Accessories*, 200 F.3d 203, 211-12 (3d Cir. 2000). Therefore, the Court finds that 9.3 hours were reasonably spent on the fee petition litigation.

However, the Court again finds that Plaintiffs have failed to establish that $350 is a reasonable hourly rate for the fee petition litigation considering the quality of Silva's work. Plaintiffs' fee petitions contain numerous errors. For instance, Plaintiffs' first fee petition states that Silva researched "Consperaicy Civil Rights deprivation of property," and it repeatedly spells "Complaint" as "Compliant." (Billing Records 1.) Additionally, when the Court ordered Plaintiffs to submit a more detailed itemization of costs, Plaintiffs submitted a non-responsive filing that provides little detail on costs, but requests an additional $9,170 in attorney's fees and an additional $1,366 in costs. Given the quality of Silva's work in the fee petition litigation, the Court finds that an hourly rate of $250 is reasonable, and the lodestar for the 9.3 hours is $2,325.

The Court will further reduce the lodestar to reflect Plaintiffs' limited success in the fee petition litigation. *See Student Pub. Interest Research Grp. of N.J.*, 842 F.2d at 1455 ("[W]here fee applicants do not fully succeed in recovering their fees, the fee award must be reduced to

reflect incomplete success on the fee award."). Plaintiffs requested attorney's fees of $74,620 in their first fee petition and $81,410 in their second fee petition, excluding fees requested for the fee petition litigation. The Court is awarding attorney's fees of $48,675 for the underlying litigation. To reflect the limits to Plaintiffs' success, the Court will reduce attorney's fees for the fee petition litigation by twenty-five percent, to $1,743.75. *See Fletcher v. O'Donnell*, 729 F. Supp. 422, 434 (E.D. Pa. 1990) ("It would be falsely precise to reduce the request for time spent on the fee petition by the amount of the request not granted . . . . Much of the time spent here would have been spent on any fee petition, and so the incremental time spent on unsuccessful claims is lower than the dollar value they represent.").

The Court will thus award Plaintiffs a total of $50,418.75 in attorney's fees, including $48,675 for the principal litigation and $1,743.75 for the litigation over attorney's fees.

Defendants propose further reducing the award of attorney's fees by $6,919.06, the amount Defendants claim they spent on veterinary care for the three dogs. (Defs.' Second Resp.) The Court rejects this proposal. First, Defendants provide no authority that allows a court to reduce attorney's fees awarded under § 1988 in this manner. Second, the Court disagrees that Defendants are entitled to $6,919.06. Defendants claim that they are entitled to the cost of veterinary bills pursuant to 18 Pa. Cons. Stat. § 5511(e), which allows a court to compensate a party who cared for an animal that was cruelly transported. (Defs.' Second Resp.) However, the Court never determined that the animals in this case were cruelly transported. To the contrary, the Court found that Defendants converted the dogs and issued a preliminary injunction returning the dogs to Plaintiffs. The Court will not now reward Defendants for improperly confiscating Plaintiffs' dogs. Therefore, the Court declines to reduce Plaintiffs' fee award by $6,919.06.

**B.     Costs**

Federal Rule of Civil Procedure 54(d)(1) "codifies a venerable presumption that prevailing parties are entitled to costs." *Marx v. Gen. Revenue Corp.*, 133 S. Ct. 1166, 1172 (2013). Rule 54 provides, in relevant part: "Unless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." There is no dispute that Plaintiffs are the prevailing party under Rule 54(d). *See Institutionalized Juveniles*, 758 F.2d at 926 (holding that the test for prevailing party status is the same under 42 U.S.C. § 1988 and Fed. R. Civ. P. 54(d)).

The term "costs" as used in Rule 54(d) is defined by 28 U.S.C. § 1920. *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441 (1987). There is a "strong presumption" that costs enumerated in § 1920 are awarded to the prevailing party. *Reger v. Nemours Found., Inc.*, 599 F.3d 285, 288 (3d Cir. 2010). "[T]he losing party bears the burden of making the showing that an award is inequitable under the circumstances." *In re Paoli R.R. Yard PCB Litig.*, 221 F.3d 449, 462-63 (3d Cir. 2000). Nevertheless, "the decision whether to award costs ultimately lies within the sound discretion of the district court." *Marx*, 133 S. Ct. at 1172.

Plaintiffs request $5,786 in costs, including money spent on filing fees, a deposition, service, copies, subpoenas, transcripts, postage, and delivery. (Billing Records 2 at 11.) Defendants argue that these costs are inadequately described, despite the Court's order of June 25, 2013, seeking greater detail. (Defs.' Second Resp.) Defendants further argue that the requested costs are largely unrelated to the claim on which Plaintiffs prevailed. (*Id*.) For the following reasons, the Court will award $1,344.50 in costs.

*1. Allowable costs*

The Court grants Plaintiffs' request for the $350 filing fee in this case. *See* 28 U.S.C. § 1920(1); *Nugget Distribs. Coop. of Am., Inc. v. Mr. Nugget, Inc.*, 145 F.R.D. 54, 57 (E.D. Pa. 1992) ("Section 1920 . . . clearly encompasses the filing fee . . . claimed by plaintiff.").

The Court will also award a portion of the $1,989 that Plaintiffs request for "Office Copies," which include photographs, veterinary records, trial exhibits, depositions, and documents from the Pennsylvania Bureau of Dog Law Enforcement and the SPCA. (Billing Records 2 at 11; Silva Aff. ¶ 7.) Defendants object to paying these costs, claiming that they are excessive and inadequately described. (Objections to Fees & Costs 1; Objections to Fees & Costs 2.) Section 1920(4) authorizes courts to tax "the costs of making copies of any materials where the copies are necessarily obtained for use in the case." 28 U.S.C. § 1920(4). Plaintiffs claim that each copy cost twenty cents when made in the office and an unspecified amount outside the office. (Silva Aff. ¶ 7.) Using Plaintiffs' numbers, Plaintiffs would have had to make 9,945 office copies to incur copying expenses of $1,989. This quantity of copies is excessive, and Plaintiffs have not provided sufficient detail to allow the Court to determine that these copies were "necessarily obtained for use" in this case. 28 U.S.C. § 1920(4). Therefore, the Court will reduce Plaintiffs' copying costs by fifty percent for an award of $994.50. *See Montgomery Cnty. v. Microvote Corp.*, Civ. A. No. 97-6331, 2004 WL 1087196, at *8 (E.D. Pa. May 13, 2004) (reducing fees for copying by fifty percent because the plaintiff did not adequately describe the documents copied); *Nugget Distribs. Coop. of Am.*, 145 F.R.D. at 57 (reducing the requested copying fees by fifty percent because these fees were "clearly excessive").

*2. Disallowed costs*

Plaintiffs request the $350 filing fee in a separate case, *Sixth Angel Shepherd Rescue, Inc. v. West*, 790 F. Supp. 2d 339 (E.D. Pa. May 3, 2011). This cost was included in Plaintiffs' August 9 petition, but not in their May 29 petition. Although Defendants do not object specifically to this filing fee, Defendants argue generally that Plaintiffs' bill includes costs that are "unrelated to her [Silva] being a prevailing party." (Defs.' Second Resp.) The Court agrees and will not award costs incurred in a separate lawsuit. In addition, Plaintiffs were not the prevailing party in that case because the court granted the defendants' motions to dismiss.

Plaintiffs also seek $373 to cover "Transcript Court." Plaintiffs include this cost only in their August 9 petition, and not in their May 29 petition. Section 1920(2) allows for the taxation of "[f]ees for printed or electronically recorded transcripts necessarily obtained for use in the case." 28 U.S.C. § 1920(2). However, Plaintiffs do not identify the transcript, and the Court cannot determine whether it was "necessarily obtained for use in the case." Therefore, the Court will not tax this cost. *See Nugget Distribs. Coop. of Am.*, 145 F.R.D. at 59 ("Those expenses for which plaintiff has not provided an adequate description of the costs will be denied.").

Plaintiffs further request $240 to cover the cost of "Service," but they do not identify the parties or papers served or the method of service. (Billing Records 2 at 11.) Because Plaintiffs provide almost no information about this item, the Court will not tax its cost. *See J & J Sports Prods., Inc. v. TCOS Enters.*, Civ. A. No. 10-7130, 2012 WL 1361655, at *4 (E.D. Pa. Apr. 19, 2012) (denying costs for service of process where the party seeking costs failed to provide any explanation or documentation); *see also Tuthill v. Consol. Rail Corp.*, Civ. A. No. 96-6868, 1998 WL 321245, at *7 (E.D. Pa. June 18, 1998) ("Because of Conrail's lack of specificity, the court would be justified in excluding all process serving costs.").

17

Plaintiffs request an additional $390 for "Subpoena/Service." (Billing Records 2 at 11.) Plaintiffs explain that these subpoenas were served on the DSPCA, the Borough of Marcus Hook, and "Magistrate Court personnel." (Silva Aff. ¶ 7.) Defendants object to the taxing of this cost, arguing that Plaintiffs do not adequately describe the subpoenas, and that Plaintiffs were "not successful in [their] attempt to subpoena to the Delaware County SPCA." (Objections to Fees & Costs 1; Objections to Fees & Costs 2.) Section 1920(1) allows for the taxing of subpoena fees. *See Montgomery Cnty.*, 2004 WL 1087196, at *3. Costs of serving testimonial and document subpoenas on witnesses and third parties may be recovered even if these parties were not deposed or did not testify at trial. *Id*. at *4. "[T]he appropriate inquiry is whether the issuance of the subpoena was reasonable and necessary in light of the facts known at the time of service." *Id*. On May 27, 2010, this Court granted a motion to quash the subpoena directed at the DSPCA and denied Plaintiffs' motion to enforce a subpoena served on Marcus Hook Borough. Because the issuance of these subpoenas was not reasonable and necessary, this Court will not tax the cost of their service. In addition, Plaintiffs do not provide sufficient information about the subpoenas served on "Magistrate Court personnel" to enable the Court to assess whether these subpoenas were reasonable and necessary.

Plaintiffs seek $643 in costs for the "Deposition of Nancy Lewis." (Billing Records 2 at 11.) This cost was included in Plaintiffs' August 9 petition, but not in their May 29 petition. Defendants object to paying this cost because Plaintiffs "do[ ] not explain how [it is] related to her [Silva] being a prevailing party on the issue of the return of the dogs." (Defs' Second Resp.) Under § 1920, this Court may tax the cost of transcripts of depositions that "appear reasonably necessary to the parties in light of the particular situation existing at the time they were taken." *Adams v. Teamsters Local 115*, 678 F. Supp. 2d 314, 326 (E.D. Pa. 2007). However, "costs for

18

depositions taken or received merely for counsel's convenience or for investigatory or discovery purposes are not taxable." *Id*. In addition, "travel expenses of counsel in attending depositions are ordinarily not taxed as costs." *Nugget Distribs. Coop. of Am.*, 145 F.R.D. at 58. Plaintiffs do not itemize the $643 spent on Lewis's deposition. It is unclear whether this money was spent on transcripts, travel, witness fees, or the service of subpoenas. Plaintiffs also do not identify Lewis or explain the contents of her testimony. Because Plaintiffs provide almost no information about the Lewis deposition, and because there is no indication that it was reasonably necessary in this case, the Court will not tax its costs.

Plaintiffs further request $429 in "Appeal Copies." (Billing Records 2 at 11.) Defendants object to this cost, claiming that the Third Circuit already awarded Plaintiffs $249.13 to cover copying costs associated with the appeal. (Objections to Fees & Costs 1; Objections to Fees & Costs 2; Defs.' Second Resp. Ex. D.) The Court agrees that these costs are duplicative.

Finally, Plaintiffs request $895 in postage fees and $127 in delivery expenses. (Billing Records 2 at 11.) These costs are not taxable under § 1920. *See Wesley v. Dombrowski*, Civ. A. No. 03-4137, 2008 WL 2609720, at *3 (E.D. Pa. June 26, 2008) (listing cases).

### III.   CONCLUSION

Accordingly, the Court will award Plaintiffs $50,418.75 in attorney's fees and $1,344.50 in costs. An Order consistent with this Memorandum will be docketed separately.